O'CONNOR et al. v. KIRBY INV. CO.
(No. 9109.)

(Court of Civil Appeals of Texas. Dallas. May 3, 1924. Rehearing Denied May 31, 1924.)

1. **Tender** ⬡⟶13(3)—**Note held not payable at "special place" within statute.**

Note payable "to the order of C. J. O'C., at Dallas, Tex.," held not payable at "special place," within Vernon's Ann. Civ. St. Supp. 1922, art. 6001—70.

2. **Tender** ⬡⟶13(3)—**"Special place" defined.**

For an instrument to come within Vernon's Ann. Civ. St. Supp. 1922, art. 6001—70, as payable at a "special place," it should be payable at a segregated place, to wit, a bank, office, or any other place of business, house or residence, usually occupied by people for business, social, or other purposes, without reference to its location, whether within or without a city, town, or village.

3. **Bills and notes** ⬡⟶128—**Maker, in absence of ·agreement, may designate place of payment.**

No place of payment being designated, the maker may designate·a place and deposit payment therefor, and so prevent his being in default as respects liability for attorney's fees.

4. **Bills and notes** ⬡⟶405—**Presentment of note accompanied by insufficient release held not to place maker in default for nonpayment.**

Where note secured by both vendor's lien and by deed of trust when presented, was accompanied by release only of vendor's lien, such presentment was insufficient to place maker in default for nonpayment.

5. **Tender** ⬡⟶15·(3)—**Rejection because of insufficiency. of amount waiver of other objections.**

·Refusal of a tender made in payment of a note solely because of insufficiency of amount constitutes a waiver of any other objection.

6. **Bills and · notes** ⬡⟶405—**Refusal to pay when note accompanied by demand for improper interest held not to place maker in default.**

Where note when first presented was not paid because of holder's insufficient release of liens securing note, and when later presented with sufficient release was accompanied by demand for additional interest, maker by refusing payment did not default so as to become liable for attorney's fees expended in attempting to enforce payment of such amount.

---

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the Kirby Investment Company against C. J. O'Connor and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Love & Rutledge, of Dallas, for appellants.

Bailey, Nickels & Bailey, of Dallas, for appellee.

VAUGHAN, J. On the following basic facts, appellee, a private corporation, filed its suit in the trial court on January 2, 1923, against appellants C. J. O'Connor and J. A. McDaniel, to enjoin the sale of a certain tract of land located on the north side of Main street in the city of Dallas, Tex., being 25x100 feet in dimension and situated 125 feet east of Akard street in said city. The sale sought to be enjoined was a trustee's sale, posted to take place on the first Tuesday in January, 1923, by appellant McDaniel as trustee under a deed of trust executed by appellee to said McDaniel as trustee, dated March 1, 1922, to secure the payment of two purchase-money notes payable at Dallas, Tex., executed by appellee to appellant O'Connor as a part of the purchase price for said land. The first note in the sum of $27,500 due and payable on or before six months after its date had been paid, and the second note in the sum of $20,000, due and payable on or before nine months after date, bearing interest from date until maturity at the rate of 6 per cent. per annum, with the interest payable at maturity, and further providing that principal and interest not paid when due should bear interest from date until paid at the rate of 10 per cent. per annum, which, according to its terms, matured December 1, 1922, had not been paid by appellee on December 11, 1922; the date said property was advertised to be sold on the first Tuesday in January, 1923.

On November 29, 1922, appellee wrote a letter to appellant O'Connor, at Dallas, Tex., requesting him to send the note, together with a release of the lien securing it, to Houston, Tex., for payment at maturity, advising that same would be paid. Prior to the mailing of this letter, but on the same day, through its manager, Robt. E. Jordan, appellee had been in negotiation with appellant O'Connor over the telephone for the purpose of securing an extension of the payment of said note, which resulted in said appellant agreeing to extend the payment of same for 12 months in consideration of the payment of 8 per cent. interest and a bonus of 2 per cent., with the further condition that no other obligation would be placed against the property securing the payment of said note. Appellee in this letter declined to accept the extension under the terms imposed.

Appellant O'Connor did not reply to this letter, but did accede to appellee's request, in that, on the 2d day of December, 1922, he forwarded the note and a release of the vendor's lien retained in the deed executed by said appellant and wife to appellee, to the South Texas Commercial National Bank, at Houston, Tex., with instructions that the bank collect the note and deliver said release and note to appellee upon the payment of the amount due thereon to date of maturity, to wit, $20,900.

On December 4, 1922, the note with release was presented by the Houston bank to appellee for payment, which was not made, or offered to be made, by reason of the fact that appellee claimed that the release so presented with said note was insufficient, in that it only released the vendor's lien, and it contended that a proper release should be executed releasing the vendor's lien and the deed of trust lien joined in by the trustee, and prepared a form of release in accordance with said requirements and requested said bank to forward same to appellant O'Connor for execution. This was done, and the release so prepared by appellee was executed by appellants and returned by appellant O'Connor to the South Texas Commercial National Bank to be presented to appellee, which was done on December 6, 1922. At this time, under instructions of appellant O'Connor, said bank demanded of appellee payment of the principal and interest on the note, together with past-due interest on the amount as provided by the terms of same up to the date the fund would reach appellant O'Connor at Dallas, Tex. Appellee refused to pay the aggregate amount so demanded, but tendered its check in the sum of $20,900, the amount due on December 1, 1922, drawn on the Southwest National Bank of Dallas, Tex., against appellee's account with said bank, for which it demanded the delivery of the note and release. The bank refused to accept the check so tendered because of the insufficient amount thereof, and, by wire, advised appellant O'Connor of this situation. Whereupon the bank was directed by appellant O'Connor, by telegram, to return the note and release to him at Dallas, which instructions the bank complied with; the release and note being received by appellant O'Connor at Dallas on December 9, 1922. Immediately thereafter appellant O'Connor delivered the note and all the papers connected with said transaction to W. J. Rutledge, Jr., an attorney in Dallas, with request that he make collection of the amount due on the note, claiming that the note was then in default and that payment had been refused. At this time it was agreed between appellant O'Connor and Rutledge that the attorney's fees provided for in the note, being the usual 10 per cent. provision, were to be paid to Rutledge for his services, and on that day Rutledge advised appellee at Houston, by letter, that the note had been placed in his

hands for collection and that the total amount due thereon was the sum of $23,059.21 on December 11, 1922; that if payment was not made on that date, there would accrue under the terms of the note the additional sum of $6.29 each day thereafter until payment was made to appellant O'Connor in Dallas.

Following this action, notices of trustee's sale were executed by appellant McDaniel, as trustee, on December 11, 1922, and posted that day, advertising the above property for sale on the first Tuesday in January, 1923. Afterwards, on December 19, 1922, appellee paid to Rutledge, as attorney for appellant O'Connor, the sum of $20,900 under an agreement that such payment should be applied on said note and that such payment was made by appellee and received by appellant O'Connor without prejudice to the rights of either with respect to any question as to interest since December 1, 1922, or attorney's fees.

Of the several grounds on which appellee sought to enjoin the sale advertised for January 2, 1923, it is only necessary to state, in order to present the issues raised by the pleadings under which the result of this appeal has been determined, that appellee was ready and willing, and offered, to pay the amount due on the note at the time it was presented, and that appellant O'Connor failed to execute a sufficient release of the liens existing to secure the payment of the note and had demanded more than was due on same for the purpose of making appellee pay a large and substantial sum as attorney's fees or cost of collection, without just cause; that on the 15th day of December, 1922, in the city of Dallas, appellee tendered to appellant O'Connor the amount of principal and interest due on said note, to wit, the sum of $20,900, which tender was refused; and that on the 19th day of December, 1922, said sum of $20,900 was again tendered to said appellant in the city of Dallas and was accepted without prejudice to the rights of either party as to the additional interest and attorney's fees claimed by said appellant and resisted by appellee.

This elimination of the other issues presented by appellee renders it unnecessary to here discuss the several propositions presented by appellant, not pertinent or germane to such issues.

Was appellee in default in reference to the payment of the note at maturity so as to justify or authorize appellant O'Connor to place it in the hands of an attorney for collection, so as to accrue against appellee the liability for the payment of attorney's fees contracted by said appellant to be paid to his attorney for the services to be rendered in connection with the collection of the amount due on the note? If so, then the judgment should be reversed and rendered for appellant O'Connor; otherwise, should be affirmed.

[1] The note involved was payable "to the order of C. J. O'Connor, at Dallas, Texas." This provision was merely a contract for the payment of the sums of money specified in the note to be made at Dallas, Tex., and only applied to the question of venue and not to the payment of the note at a "special place" within the meaning of article 6001—70, Vernon's Texas Civil and Criminal Statutes, 1922 Supp., so that the ability and willingness of the maker to pay at a specially designated place would be equivalent to a tender of payment. Corbett v. Ulsaker Printing Co. (N. D.) 190 N. W. 75, 24 A. L. R. 1047 and note at page 1050; Rose v. McCracken et al., 20 Tex. Civ. App. 637, 50 S. W. 152; Greenlief v. Watson, 83 Me. 266, 22 Atl. 165.

[2, 3] In order for an instrument to come within the provisions of said article, same, by its terms, should be payable at a segregated place, to wit, a bank, office, or any other place of business, house or residence, usually occupied by people for business, social, or other purposes, without reference to its location, whether within or without a city, town, or village. Therefore we hold that said note by its terms was not payable at a "special place" within the meaning of said article, but was payable generally, in that no special place within the city of Dallas was designated at which same should be presented for payment. The parties were at liberty to agree upon a special place for said note to be presented for payment. This was done by appellant O'Connor, acting upon the request of appellee to send the note to Houston, Tex., for payment at maturity, by sending said note to the South Texas Commercial National Bank, at Houston, Tex. Rose v. McCracken, supra, in which the court held:

"No place of payment being designated in a note, the maker may designate a place, and deposit money there, so as to prevent his being in default, whereby the payee would be entitled to attorney's fees provided in case the note was not paid at maturity, and was collected by suit or attorney."

[4] To secure the payment of the note involved, appellant O'Connor reserved the vendor's lien and, as additional security, had appellee to execute a deed of trust to McDaniel as trustee, for the use and benefit of appellant O'Connor as the holder of said note, thereby creating two liens separate and distinct on the property conveyed by said appellant to appellee, in part consideration for which the note involved was executed. The deed of trust was filed for record March 9, 1922, and duly recorded in the deed of trust records of Dallas county, Tex.

The request to send the note to Houston was made by appellee before maturity of the note, which appellant O'Connor agreed to, as was shown by his presenting it at a "special place" in Houston for payment (Rose v. McCracken, supra), and the reason the note

was not paid at the time when first presented by the South Texas Commercial National Bank was the lack of a proper release, for the want of which payment was withheld. This did not put appellee in default because the note, for the want of proper release, had not been presented so as to require payment to be made in order to prevent the maker from being in default for nonpayment on the day of maturity. Appellee had the right, not only to expect but to demand the execution of a release whereby both the vendor's lien and deed of trust lien would not only, in effect, be released as a matter of fact or which under judicial investigation could be so ascertained, but would be released as a matter of record so as to remove even the apparent cloud from the title to the property thus encumbered, before being required to make payment of the note thus secured by the dual lien. In this respect it was the duty of appellant O'Connor, the holder of the indebtedness, to execute such a release as, when placed of record, would remove from appellee's title the effect of the liens existing to secure the payment of the note that appellee was called upon to discharge. It was not sufficient that the release first tendered would have prevailed in a judicial contest, or by additional proof in support of same, to have freed appellee's title from the cloud that would have remained on same by virtue of the deed of trust lien not having been released. Appellee was entitled to demand and receive the full measure of protection and acquittance in this instance, and was not required to accept an instrument as a release which was incomplete in this respect, being only a means to assist in freeing its title from this burden and not within itself accomplishing such result.

It is true the note was not presented until the 4th day of December, and was due on the 1st day of December. This was due to the failure of appellant O'Connor to have the note presented on its due date at the place the parties had agreed for it to be presented for payment before same had matured. At this time no liability had accrued for the payment of interest beyond the amount that had accrued on the date of maturity, to wit, the sum of $900. On being advised of appellee's demand for a release covering and releasing the deed of trust lien as well as the vendor's lien to be executed as prepared by appellee and forwarded by the Houston bank to appellant O'Connor for execution, same was executed and returned to the bank with instructions to deliver said release and note to appellee on the payment of $20,940. This was a demand for the payment of $40 additional interest accrued from the 1st day of December, 1922. Payment of this amount was refused, but a tender of the payment of $20,900, viz. $20,000, the amount of principal,

and $900 interest accrued thereon up to the maturity of the note, December 1, 1922, was made by appellee in the form of its check for the sum of $20,900 drawn on the Southwest National Bank of Dallas against its account carried with said bank. At this time appellee had to its credit with said bank, and subject to its check, about $44,000, which condition remained practically unchanged until December 19, 1922, the date the $20,900 was paid by appellee to appellant O'Connor on the note. This tender was refused, not because of the manner and form in which it was made, but solely because it was not sufficient in amount by the sum of $40 to cover the payment of the sum demanded by appellant O'Connor in discharge of the amount claimed by him to be due on the note.

[5] The check thus tendered in payment of the note was not objected to for the want of value, or otherwise questioned as a legal tender within the meaning of the law. The only question raised in reference to the tender thus made was the insufficient amount of the check, from which it is apparent that if a proper legal tender of said sum of $20,900 had been made, same would not have been accepted in full payment of the note. Therefore appellant O'Connor waived any other objection that existed to said tender at the time same was made. Gunby v. Ingram et ux., 57 Wash. 97, 106 Pac. 495, 36 L. R. A. (N. S.) 232; Haney v. Clark, 65 Tex. 93.

[6] This was the first time the note had been presented at the place of payment agreed upon between the parties with proper release of the vendor's lien and deed of trust liens attached so as to require prompt payment to prevent appellee, as the maker thereof, from being in default for nonpayment. However, as appellant O'Connor demanded the payment of a greater sum, to wit, the interest accrued after maturity of the note, amounting to about $40 more than was justly due by appellee as interest thereon, and as appellant O'Connor, acting through his agent, refused to receive the sum of $20,900 so tendered by appellee in payment of said note, appellee, as the maker thereof, was not in default for nonpayment on the date of maturity. Therefore the right to demand the payment of attorney's fees against appellee never accrued to appellant O'Connor.

We therefore hold that the payment of $20,900 made by appellee to appellant O'Connor on the 19th day of December, 1922, was the due and proper discharge of the obligation resting on appellee by virtue of the note involved in this proceeding as if same had been paid to and received by appellant O'Connor on the maturity date of the note.

It is therefore ordered that the judgment of the trial court be, and the same is hereby in all things, affirmed.

Affirmed.